1

2

3

4

5

6

7                          **UNITED STATES DISTRICT COURT**

8                          **CENTRAL DISTRICT OF CALIFORNIA**

9

10   STEVE D. PHEGLEY,                )   No. EDCV 07-00366 SS
                                      )
11                 Plaintiff,         )
                                      )
12          v.                        )   **MEMORANDUM DECISION AND ORDER**
                                      )
13   MICHAEL J. ASTRUE,               )
     Commissioner of the Social       )
14   Security Administration          )
                                      )
15                 Defendant.         )
     ─────────────────────────────── )
16

17

18        Plaintiff Steve D. Phegley ("Plaintiff") brings this action seeking

19   to overturn the decision of the Commissioner of the Social Security

20   Administration (hereinafter the "Commissioner" or the "Agency") denying

21   in part his application for Disability Insurance Benefits ("DIB") and

22   Supplemental Security Income ("SSI").  The parties consented, pursuant

23   to 28 U.S.C. § 636(c), to the jurisdiction of the undersigned United

24   States Magistrate Judge.   This matter is before the Court on the

25   parties' Joint Stipulation ("Jt. Stip."), filed on January 25, 2008.

26   For the reasons stated below, the decision of the Commissioner is

27   AFFIRMED

28

# I.

## PROCEDURAL HISTORY

Plaintiff filed an application for DIB and SSI on August 5, 2003. (Administrative Record ("AR") 103-05). Plaintiff alleged that he is disabled due to Attention Deficit Hyperactive Disorder ("ADHD") and chronic depression. (AR 111). Plaintiff asserts that his disability onset date was January 1, 2002.[1] (AR 14, 397).

The Agency denied Plaintiff's claims for benefits initially and upon reconsideration. (See AR 35-38, 51-55). On April 15, 2005, Administrative Law Judge ("ALJ") David M. Ganly conducted a hearing to review Plaintiff's claims. (AR 386-433). Plaintiff, who was represented by counsel, testified. (AR 414-30). A medical expert ("ME"), Dr. Michael Kania,[2] and vocational expert ("VE") David Rinehart, also testified. (AR 398-413, 430-32). The ALJ denied benefits on June 29, 2005. (AR 26-32). Plaintiff sought review of the ALJ's decision before the Appeals Council. (AR 79).

On September 9, 2005, the Appeals Council vacated the ALJ's decision and remanded the case for resolution of several issues. (AR 80-82). On January 3, 2006, the ALJ conducted a subsequent hearing to

---

[1] Plaintiff initially claimed a disability onset date of January 1 or January 15, 1998. (AR 103, 111). In light of his work activity in 2000 and 2001, however, Plaintiff amended his alleged onset date to January 1, 2002 at the original hearing. (AR 14, 397).

[2] The hearing transcript refers to Dr. Kania as Dr. Kanice. However, his curriculum vitae, indicates otherwise, as does the ALJ's original decision. (AR 63-66).

review Plaintiff's claims.  (AR 436-80).  The ALJ heard testimony from Plaintiff, (AR 461-72), ME Dr. Joseph Malancharuvil, (AR 441-60), and VE Corinne Porter.  (AR 475-78).  On March 16, 2006, the ALJ issued a partially favorable decision, finding Plaintiff disabled from June 1, 2003 through January 31, 2005.  (AR 14-21).  Plaintiff again sought review of the ALJ's decision before the Appeals Council.  (AR 10).  The Appeals Council denied review, making the ALJ's 2006 decision the final decision of the Commissioner.  (AR 7-9).  Plaintiff commenced the instant action on April 4, 2007.

## II.

### THE FIVE-STEP SEQUENTIAL EVALUATION PROCESS

To qualify for disability benefits, a claimant must demonstrate a medically determinable physical or mental impairment that prevents him from engaging in substantial gainful activity and that is expected to result in death or to last for a continuous period of at least twelve months.[3]  Reddick v. Chater, 157 F.3d 715, 721 (9th Cir. 1998) (citing 42 U.S.C. § 423(d)(1)(A)).  The impairment must render the claimant incapable of performing the work that he previously performed and incapable of performing any other substantial gainful employment that exists in the national economy.  Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)(2)(A)).

---

[3] Substantial gainful activity means work that involves doing significant and productive physical or mental duties and is done for pay or profit.  20 C.F.R. §§ 404.1510, 416.910.

3

To decide if a claimant is entitled to benefits, an ALJ conducts a five-step inquiry.  20 C.F.R. §§ 404.1520, 416.920.  The steps are as follows:

(1)  Is the claimant presently engaged in substantial gainful activity?  If so, the claimant is found not disabled. If not, proceed to step two.

(2)  Is the claimant's impairment severe?  If not, the claimant is found not disabled.  If so, proceed to step three.

(3)  Does the claimant's impairment meet or equal one of the specific impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1?  If so, the claimant is found disabled.  If not, proceed to step four.

(4)  Is the claimant capable of performing her past work?  If so, the claimant is found not disabled.  If not, proceed to step five.

(5)  Is the claimant able to do any other work?  If not, the claimant is found disabled.  If so, the claimant is found not disabled.

Tackett, 180 F.3d at 1098-99; see also Bustamante v. Massanari, 262 F.3d 949, 953-54 (9th Cir. 2001) (citations omitted); 20 C.F.R. §§ 404.1520(b)-(g)(1), 416.920(b)-(g)(1).

4

The claimant has the burden of proof at steps one through four, and the Commissioner has the burden of proof at step five. Bustamante, 262 F.3d at 953-54. If, at step four, the claimant meets his burden of establishing an inability to perform past work, the Commissioner must show that the claimant can perform some other work that exists in "significant numbers" in the national economy, taking into account the claimant's residual functional capacity ("RFC"),[4] age, education and work experience. Tackett, 180 F.3d at 1099-1100; Reddick, 157 F.3d at 721; 20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1). The Commissioner may do so by the testimony of a vocational expert or by reference to the Medical-Vocational Guidelines appearing in 20 C.F.R. Part 404, Subpart P, Appendix 2 (commonly known as "the Grids"). Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001). When a claimant has significant exertional (strength-related) and nonexertional limitations, the Grids are inapplicable and the ALJ must take the testimony of a vocational expert. Moore v. Apfel, 216 F.3d 864, 869 (9th Cir. 2000).

### III.

### THE ALJ'S DECISION

The ALJ employed the five-step sequential evaluation process discussed above.[5] At step one, the ALJ determined that Plaintiff had

---

[4] RFC is "the most [the claimant] can still do despite [his] limitations" and represents an assessment "based on all the relevant evidence in [the claimant's] case record." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).

[5] The Court does not discuss those portions of the ALJ's decision that relate only to the finding of temporary disability, since that aspect of the decision is not in dispute.

not engaged in substantial gainful activity since the alleged onset of disability. (AR 18). At step two, the ALJ found that Plaintiff's personality order, not otherwise specified, major depressive episode, single episode, resolved with residual dysthymia, and history of alcohol and amphetamine abuse in remission were severe impairments. (Id.). At step three, the ALJ ascertained that prior to June 1, 2003 and after January 31, 2005, Plaintiff did not have an impairment or combination of impairments that met or equaled a listing. (AR 18-20). At step four, the ALJ determined that beginning on January 31, 2005, Plaintiff had been capable of performing past relevant work as an order puller. (AR 21).

With respect to steps three and four, the ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to produce the alleged symptoms, but that [Plaintiff's] statements concerning the intensity, duration and limiting effects of these symptoms are not entirely credible beginning on January 31, 2005." (AR 20) (emphasis omitted). Because the ALJ determined that Plaintiff could perform past relevant work, he concluded that Plaintiff was not currently disabled and did not proceed to step five. (AR 21).

## IV.

### STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits. The court may set aside the Commissioner's decision when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole.

Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001); Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996).

"Substantial evidence is more than a scintilla, but less than a preponderance." Reddick, 157 F.3d at 720. It is "relevant evidence which a reasonable person might accept as adequate to support a conclusion." Id. To determine whether substantial evidence supports a finding, the court must "'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'" Aukland, 257 F.3d at 1035 (quoting Penny v. Sullivan, 2 F.3d 953, 956 (9th Cir. 1993)). If the evidence can reasonably support either affirming or reversing that conclusion, the court may not substitute its judgment for that of the Commissioner. Reddick, 157 F.3d at 720-21.

**V.**

**DISCUSSION**

Plaintiff contends that the Commissioner's decision should be overturned for four reasons. First, he claims that the ALJ did not comply with the Appeals Council Order requiring the ALJ to properly consider the evaluation of Dr. Leonard. (Jt. Stip. at 3-5). Second, he asserts that the ALJ did not properly develop the record. (Id. at 7-8). Third, he maintains that the ALJ did not properly consider the lay witness testimony. (Id. at 11-13). Finally, Plaintiff submits that the ALJ did not pose a complete hypothetical question to the VE. (Id. at 15-16). The Court disagrees with Plaintiff's contentions and instead finds that the ALJ's decision should be affirmed.

7

**A.   Plaintiff's Claim That The ALJ Did Not Properly Consider Dr. Leonard's Evaluation Does Not Warrant Remand**

Plaintiff contends that the ALJ erred by failing to discuss the work capacity evaluation of Dr. Elizabeth Leonard, as ordered by the Appeals Council. (Jt. Stip. at 3). Plaintiff argues that Dr. Leonard's evaluation suggests that Plaintiff became disabled prior to June 1, 2003, and that the ALJ therefore needed to address his pre-June 1, 2003 impairments on remand. (Id. at 4). The Court disagrees.

On December 18, 2003, Dr. Leonard completed a "Work Capacity Evaluation (Mental)" for Plaintiff. (AR 305-06). In it, she assessed the limitation of Plaintiff's "ability to do work-related activities on a day-to-day basis in a regular work setting" due to any mental or emotional impairments. (AR 305). Dr. Leonard assessed Plaintiff to have "[e]xtreme" limitations in three of the sixteen categories: the "ability to maintain attention and concentration for extended periods," the "ability to sustain an ordinary routine without special supervision" and the "ability to respond appropriately to changes in the work setting." (AR 305-06). In addition, Dr. Leonard found that Plaintiff had "[m]arked" limitations in eleven of the sixteen categories. (Id.). Dr. Leonard indicated that Plaintiff's "impairment lasted or can . . . be expected to last at least 12 months." (AR 305).

In the ALJ's original decision, he rejected Dr. Leonard's assessment "that [Plaintiff] has marked limitations in multiple areas of functioning" because it was "not consistent with the other treating records in file and it appears that Dr. Leonard [sic] assessment is

8

exaggerated." (AR 29).  In its order vacating the decision, the Appeals Council found that the decision did not contain an adequate evaluation of Dr. Leonard's assessment.  (AR 80).  The Appeals Council noted that "the decision . . . indicates that Dr. Leonard's opinion is inconsistent with the other treating source records, but the decision does not refer to, nor discuss, the evidence that is inconsistent with Dr. Leonard's opinion."  (<u>Id.</u>).  The Appeals Council admonished the ALJ to resolve this issue on remand.  (<u>Id.</u>).

In his decision on remand, the ALJ did not discuss Dr. Leonard's work capacity evaluation.  Instead, he found that Plaintiff was disabled for a period of time beginning more than six months prior to the evaluation and ending more than thirteen months afterwards.  Plaintiff argues that Dr. Leonard's evaluation "conceivabl[y]" could have indicated that Plaintiff's disability had lasted since the middle of December 2002.  (Jt. Stip. at 4).

However, Dr. Leonard's evaluation, which amounted to nothing more than checking off boxes on a two-page form, provides <u>no</u> indication of when Plaintiff's impairments began -- other than sometime before December 18, 2003 -- and literally states that Plaintiff's impairments might last anywhere from 366 days to his entire life.  The ALJ's decision found Plaintiff disabled for 611 days, starting on June 1, 2003.  That finding is entirely consistent with the evidence from Dr. Leonard.  Moreover, Dr. Leonard only began his treatment of Plaintiff on June 3, 2003, which strongly suggests that her diagnosis six and a half months later did not refer to an earlier time period.  (<u>See</u> AR 225).

1    As Defendant points out, the ALJ's decision on remand to find
2    Plaintiff disabled around the time of Dr. Leonard's work capacity
3    evaluation rendered any further discussion of that evidence unnecessary.
4    (Jt. Stip. at 5).  The June 1, 2003 onset finding was not arbitrary; the
5    ALJ expressly relied on evidence from the ME "that [Plaintiff's]
6    condition during the period from June 2003 through December 2005 was
7    fragile and that he was likely to decompensate with even minimal changes
8    in his situation despite the fact that he was otherwise only moderately
9    limited."  (AR 19; <u>accord</u> AR 450).

11   The ALJ's determination of Plaintiff's disability onset date
12   accorded with Dr. Leonard's assessment and was based on other evidence
13   favorable to Plaintiff.   Therefore, Plaintiff's first claim does not
14   warrant remand.

16   **B.    <u>Plaintiff's Claim That the ALJ Did Not Properly Develop the Record</u>**
17   **<u>Does Not Warrant Remand</u>**

19   Plaintiff also contends that the ALJ erred by failing to develop
20   the record. (Jt. Stip. at 7).  Specifically, Plaintiff argues that the
21   ALJ should have ascertained the "content and/or existence" of a
22   narrative report that Dr. Leonard may have completed on or about May 20,
23   2005.   (<u>Id.</u>).   He speculates that the report may contain "further
24   clarification of Dr. Leonard's opinion regarding the onset and severity
25   of Plaintiff's condition."  (<u>Id.</u>).

27   On May 20, 2005, Dr. Leonard made the following notation in
28   Plaintiff's progress notes: "SSI Narrative Report done." (AR 383).  On

10

May 23, 2005, Amelia Avena, a Benefits Specialist for Riverside County, made the following notation: "Received narrative report from MD, reviewed for completion.  Entered necessary information into Benefits Unit Database.  Billed and mailed narrative to attorney."  (AR 384). The ALJ acknowledged the possible existence of this narrative report, but stated that "no such report has been submitted."  (AR 19).

Plaintiff's present counsel has represented Plaintiff in this matter since at least April 15, 2005.[6]  (AR 77-78).  Thus, when on May 23, 2005, Riverside County mailed a doctor's narrative report to Plaintiff's attorney, it presumably mailed the Dr. Leonard's report. Plaintiff cannot fault the ALJ for failing to develop the record when Plaintiff, through his attorney, apparently the information at issue. Regardless, his contention lacks merit for other reasons.

The ALJ has an independent duty to fully and fairly develop the record and to assure that the claimant's interests are considered, even when the claimant is represented by counsel.  Widmark v. Barnhart, 454 F.3d 1063, 1068 (9th Cir. 2006); Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001); Smolen, 80 F.3d at 1288; Brown v. Heckler, 713 F.2d 441, 443 (9th Cir. 1983) (per curiam).  However, it is the plaintiff's duty to prove that he is disabled.  Mayes v. Massanari, 276 F.3d 453, 459 (9th Cir. 2001) (citing 42 U.S.C. § 423(d)(5) and Clem v. Sullivan, 894 F.2d 328, 330 (9th Cir. 1990)).  As noted in Mayes, an ALJ's duty to develop the record further is triggered only when there

_____

[6] Plaintiff signed the Agency's form consenting to representation on April 15, 2005, the date of Plaintiff's initial hearing. (AR 77-78). However, on March 11, 2005, Plaintiff's counsel sent Riverside County Mental Health a request for Plaintiff's medical records.  (AR 312).

is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence. <u>Mayes</u>, 276 F.3d at 459-60 (citing <u>Tonapetyan</u>, 242 F.3d at 1150). Here, the ALJ's duty was not triggered.

As discussed above, Dr. Leonard only began treating Plaintiff in June 2003, making it unlikely that she would have expressed an opinion about his condition prior to that date. The ALJ thus had no duty, based on Dr. Leonard's notes, to expand the record regarding the onset date of Plaintiff's disability. Moreover, as Plaintiff observes, (Jt. Stip. at 7), Dr. Leonard's August 28, 2003 narrative report indicates that Plaintiff's symptoms had been "worsening over this past year." (AR 296). That comment suggests that Plaintiff's symptoms were less severe earlier in the year, in line with the ALJ's finding that disability occurred in June 2003, the date that Plaintiff apparently first sought out treatment. Plaintiff presented no evidence of disability prior to that date that would have triggered the ALJ's duty to develop the record.

With respect to the severity of his disability, Plaintiff contends that Dr. Leonard's use of the word "chronic" on her August 28, 2003 narrative report raises an inference that Plaintiff's disabled status might have continued indefinitely. (Jt. Stip. at 7). Thus, Plaintiff argues, the ALJ had a duty to seek out the May 20, 2005 narrative report for evidence that might contradict the ALJ's finding that Plaintiff's disability had already ended. (<u>Id.</u> at 7-8). Notwithstanding Plaintiff's argument to the contrary, the record was both adequate and sufficiently unambiguous to support the ALJ's decision.

12

The ALJ acknowledged that detailed clinical notes from Plaintiff's sessions with a social worker were not available from August 2004 to May 2005, nor was Dr. Leonard's May 20, 2005 narrative report. (AR 19). Nonetheless, the ALJ found that Dr. Leonard's clinical notes provided evidence that Plaintiff's symptoms had decreased by the end of the disability period. (Id.). For instance, on December 28, 2004, Dr. Leonard described Plaintiff as responding well to medication, controlling his anger and appearing friendly and alert, although she also observed that he had fatigue and racing thoughts. (AR 335). On June 22, 2005, shortly after the missing narrative report, Dr. Leonard described Plaintiff as having only "mild dysthymia" and general anxiety, noting that he worried about his future. (AR 349). She also stated that Plaintiff appeared alert, maintained good eye contact and experienced thought progressions in a logical manner. (Id.). This evidence of mild symptoms suggests that Plaintiff's medication had brought his mental impairments under control. An additional report from Dr. Leonard would have been of marginal, if any, value.

The ALJ also pointed out that medical expert Dr. Malancharuvil, who testified at the hearing, examined the record and questioned Plaintiff, concluded that Plaintiff had only a non-severe mental impairment by the end of January 2005. (AR 19; accord AR 452 (describing that as a "somewhat generous period" of disability)). The ALJ found that the evidence supported the ME's conclusion. (AR 19). The ALJ observed that Plaintiff had broken up with his girlfriend in early 2005 yet showed no resulting decompensation or marked limitations in his daily activities, social functioning or ability to maintain concentration, pace or persistence. (AR 19-20; accord AR 385).

1    The record thus adequately supported the ALJ's decision and Dr.

2    Leonard's missing narrative report would not have substantially

3    illuminated her treatment notes, which indicated that Plaintiff had

4    begun responding favorably to medication by 2005.  Therefore, the ALJ

5    had no duty to further develop the record and Plaintiff's second claim

6    fails.

7

8    **C.**   **Plaintiff's Claim That the ALJ Did Not Properly Consider the Lay**

9         **Witness Testimony Does Not Warrant Remand**

10

11       Plaintiff contends that the ALJ erred by failing to consider the

12   lay witness statements of both Garnet Lynn Magnus, Plaintiff's

13   girlfriend at the time, and Plaintiff's father.  (Jt. Stip. at 11).

14   Magnus and Plaintiff's father each submitted a "Function Report -- Adult

15   -- Third Party" to the Agency providing their insights into Plaintiff's

16   condition and limitations.  (Id. at 11-12).  Plaintiff argues that the

17   ALJ should have addressed this evidence and could not properly have

18   rejected it without providing explicit reasons.  (Id. at 12).  The Court

19   disagrees.

20

21       When making a disability determination, an ALJ must consider lay

22   witness testimony concerning a claimant's ability to work.  Stout v.

23   Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1053 (9th Cir. 2006) (citing

24   Dodrill v. Shalala, 12 F.3d 915, 919 (9th Cir. 1993), and 20 C.F.R. §§

25   404.1513(d)(4) & (e), 416.913(d)(4) & (e)).  Consequently, in order to

26   discount the testimony of lay witnesses, an ALJ must give reasons that

27   are germane to each witness.  Id.  Where the ALJ fails to properly

28   discuss competent lay testimony favorable to the claimant, "a reviewing

14

1  court cannot consider the error harmless unless it can confidently
2  conclude that no reasonable ALJ, when fully crediting the testimony,
3  could have reached a different disability determination." Id. at 1056;
4  see also Robbins v. Soc. Sec. Admin., 466 F.3d 880, 885 (9th Cir. 2006).
5
6       However, an ALJ need not discuss every piece of evidence in the
7  record. Howard ex rel. Wolff v. Barnhart, 341 F.3d 1006, 1012 (9th Cir.
8  2003) (citing Black v. Apfel, 143 F.3d 383, 386 (8th Cir. 1998), and
9  Vincent ex rel. Vincent v. Heckler, 739 F.2d 1393, 1394-95 (9th Cir.
10  1984)).   An ALJ's failure to cite specific evidence does not indicate
11  that such evidence was not considered. Black, 143 F.3d at 386.   Nothing
12  requires an ALJ to analyze evidence that is neither significant nor
13  probative. Howard, 341 F.3d at 1012.
14
15       Because Magnus's "report" was cumulative of other evidence that the
16  ALJ discussed and adopted in finding Plaintiff temporarily disabled, the
17  ALJ's failure to expressly discuss her statements was harmless error,
18  if error at all.   Magnus signed her report on August 18, 2003, nearly
19  three months after the ALJ found that Plaintiff's disability had begun.
20  (AR 154).   She stated that she had only known Plaintiff for one year,
21  and "following a couple of months [Plaintiff] became full of anxiety,
22  paranoia and suffered insomnia, manic episodes and angry, sometimes
23  violent outbursts." (AR 153).   This statement does not conflict with
24  the disability onset date determined by the ALJ and has no bearing on
25  the disability termination date, which occurred more than a year after
26
27
28

15

Magnus's report was completed.[7]  Therefore, the ALJ implicitly credited this evidence in finding Plaintiff temporarily disabled and remand is not required for further consideration of her statements.

Plaintiff's father signed his "Function Report - Adult - Third Party" on August 19, 2005, more than six months after the ALJ determined Plaintiff's disability had ended.  (AR 191).  In addition, Plaintiff's father's report actually undermines Plaintiff's claim that he continues to experience severe psychiatric impairments that limit his ability to work.

Plaintiff's father reported that Plaintiff can do certain jobs and tasks.  For instance, Plaintiff "works in the yard once or twice a month [and] sometimes washes dishes or cooks himself something to eat."  (AR 184).  In addition, he "helps babysit his niece and nephew."  (AR 185).  Furthermore, he "keeps [his] room up, does his laundry, [and] mows periodically," although he needs help or encouragement in mowing the lawn.  (AR 186).  Plaintiff goes outside daily.  (AR 187).  He drives a car, and once or twice a month takes his father and niece shopping for food and clothing.  (Id.).

_____

[7] Magnus also states that she found out from Plaintiff's friends and family that he "has been struggling for about 10 years."  (AR 153). As noted in the record, Plaintiff admitted poly-substance abuse, which probably contributed to his struggle with mental impairments.  (AR 204, 209, 210). "Struggling," however, does not necessarily mean "disabled." To the extent that Magnus intended to convey Plaintiff's long term disability, her statement is not significant or probative since it relies entirely on hearsay and is plainly contradicted by Plaintiff's work history through 2001.

16

Plaintiff's father did say that "at times [Plaintiff] argues with anyone that will argue with him" and "has no social activities." (AR 189). However, Plaintiff's father described Plaintiff as only "a little appre[he]nsive all the time." (AR 190).

Plaintiff's father did not know how well Plaintiff gets along with authority figures. (AR 190). He claimed that Plaintiff once had been fired or laid off from a job with Starcrest for "arguing and fighting with employees," although this assertion conflicts with Magnus's account. (Compare AR 190 with AR 152). Plaintiff's father reported that Plaintiff can pay attention for a half hour and finishes what he starts. (AR 189). Moreover, he asserted that Plaintiff follows both written and spoken instructions "ok." (Id.). Although Plaintiff reportedly does not handle stress well, he handles changes in routine "ok." (AR 190). Tellingly, in the "Remarks" section, Plaintiff's father noted only physical ailments, such as Plaintiff's need for a dentist and a physical examination, opining that he thought Plaintiff was a diabetic. (AR 191). Plaintiff's father did not elaborate on any psychological problems.

As a whole, the report by Plaintiff's father strongly supports the ALJ's finding that "the evidence therefore does establish a decrease in symptom [sic] by at least the end of December 200[4] as compared to June 2003."[8] (AR 19). Since this report is not at all favorable to Plaintiff, the ALJ had no duty to discuss it. Like the report by Plaintiff's girlfriend, no reasonable ALJ would have come to a different

_____

[8] The ALJ refers to "December 2005" -- clearly a typographical error -- instead of "December 2004."

1    conclusion, even if the report was "fully credited." <u>Stout</u>, 454 F.3d

2    at 1056.   Consequently, Plaintiff is not entitled to a remand on this

3    ground.

4

5    **D.   Plaintiff's Claim That The ALJ Did Not Pose a Complete**

6        **Hypothetical Question To The Vocational Expert Does Not Warrant**

7        **Remand**

8

9        In his final claim, Plaintiff contends that the ALJ failed to

10   include all of Plaintiff's functional limitations in the hypothetical

11   question to the VE.  (Jt. Stip. at 15-16).  Plaintiff asserts that when

12   the ALJ described the hypothetical job seeker's profile, he should have

13   included the impairments in Dr. Leonard's December 18, 2003 work

14   capacity evaluation as well as the information from the missing

15   narrative report.  (<u>Id.</u> at 16).  The Court disagrees.

16

17       A hypothetical question posed to a VE must contain "<u>all</u> of the

18   limitations and restrictions" that are supported by substantial

19   evidence.  <u>Magallanes v. Bowen</u>, 881 F.2d 747, 756 (9th Cir. 1989); <u>see</u>

20   <u>also</u> <u>Rollins v. Massanari</u>, 261 F.3d 853, 863 (9th Cir. 2001).

21   Otherwise, the VE's testimony does not suffice to carry the

22   Commissioner's burden of proving ability to engage in work in the

23   national economy.  <u>Andrews v. Shalala</u>, 53 F.3d 1035, 1044 (9th Cir.

24   1995).   Conversely, in forming the hypothetical, the ALJ need not

25   include any limitations not supported by substantial evidence in the

26   record.   <u>Robbins</u>, 466 F.3d at 886 (citing <u>Osenbrock</u>, 240 F.3d at

27   1163-65).

28

                                    18

At the hearing on remand, the ALJ posed the hypothetical question to the VE as follows:

[W]e'd like you to consider [the question] in the light of a gentleman the same age, education and prior work experience as [Plaintiff]. . . . I'm not going to give you any severe impairments, physically. Mentally, let's see -- we have -- okay. All right. Functionally, he would be limited to five step instructions or tasks and he should not be around hazardous, moving machinery. . . . Given those two limitations, could he do any of his prior work?

(AR 475-76). The VE testified that such a person could perform Plaintiff's past job as an order puller, (AR 476), and the ALJ relied on this testimony in his decision at step four. (AR 21).

Substantial evidence in the record supports, and Plaintiff does not challenge, the ALJ's finding that Plaintiff's "statements concerning the intensity, duration and limiting effects of [his] symptoms are not entirely credible beginning on January 31, 2005." (AR 20). The ALJ discussed Plaintiff's testimony at the remand hearing that his mental health had recently worsened, but noted that the symptoms were "not to[o] dissimilar from those he noted in the treating source records from 2004 and 2005 when his condition had clearly improved and stabilized with only mild to moderate symptomology and no apparent deficits in memory or concentration." (Id.). The ALJ also agreed with ME Dr. Malancharuvil that Dr. Leonard's work capacity evaluation was severely exaggerated because Plaintiff was evaluated upon his hospitalization in

19

2004 and found not to have severe mental problems.  (Id.; see AR 453, 459).  An ALJ need not incorporate into the hypothetical subjective complaints and alleged limitations that he deems not credible.  See Bayliss v. Barnhart, 427 F.3d 1211, 1217-18 (9th Cir. 2005); Thomas v. Barnhart, 278 F.3d 947, 959-60 (9th Cir. 2002).

Plaintiff himself testified that his condition had improved since he began seeing therapists and taking medication.  (AR 469-70).  Dr. Leonard's treatment notes reflect this conclusion as well. Consequently, the ALJ had no reason to include the limitations from the 2003 work capacity evaluation in the hypothetical question to the VE. To the extent that Plaintiff argues the ALJ also should have incorporated whatever limitations Dr. Leonard's missing 2005 narrative report might have contained, the ALJ obviously could not have factored in unavailable evidence.  As discussed above, he had no duty to expand the record.

Because substantial evidence did not support the existence of any severe psychiatric limitations on Plaintiff's ability to work, the ALJ was not required to include any in his hypothetical question to the VE. Consequently, this claim does not warrant remand.

\\

\\

\\

\\

\\

\\

\\

1

**VI.**

2

**CONCLUSION**

3

4          Consistent with the foregoing, IT IS ORDERED that Judgment be

5     entered AFFIRMING the decision of the Commissioner and dismissing this

6     action with prejudice.   IT IS FURTHER ORDERED that the Clerk of the

7     Court serve copies of this Order and the Judgment herein on counsel for

8     both parties.

9

10    DATED: March 4, 2008.                              /S/

11                                      _____

                                            SUZANNE H. SEGAL
12                                    UNITED STATES MAGISTRATE JUDGE

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

21